**FOR PUBLICATION**

## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| CORNELIUS PRIOR, | Civil Action No. 1999-232 |
| Plaintiff, | |
| v. | OPINION ON MOTION |
| | FOR COUNSEL FEES AND |
| INNOVATIVE COMMUNICATION CORPORATION, | COSTS BY DEFENDANT |
| Defendant. | |

**APPEARANCES:**

J. Daryl Dodson, Esquire
5035 Norre Gade, Suite 1
P.O. Box 310
St. Thomas, V.I. 00804

   *Attorney for Plaintiff*

Joel H. Holt, Esquire
2132 Company Street, Suite 2
Christiansted
St. Croix, V.I. 00820

   *Attorney for Defendant*

**BROTMAN, DISTRICT JUDGE (Sitting by Designation)**

I.   **BACKGROUND**

This matter comes before the Court upon application by Defendant Innovative Communication Corporation f/k/a Atlantic Tele-Network Co. (hereinafter referred to as "Innovative") for an award of attorney fees and costs. In the issue in this proceeding Plaintiff,

1

Cornelius Prior, Jr. (hereinafter referred to as "Prior") sought to recover supplemental pension benefits that he believed were owed to him by Innovative. The matter was litigated by the parties and judgment was decided in favor of Innovative by Order of this Court dated March 8, 2005. That decision, made pursuant to the Employment Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461, held that Innovative did not owe payment to Prior for any supplemental pension benefits.[1] For the reasons expressed below, Innovative's pending request for payment of fees and costs will be denied.

## II. JURISDICTION AND BASIS FOR LEGAL ANALYSIS

This Court has subject matter jurisdiction as it was litigated pursuant to the federal ERISA statute.[2] Innovative's Request for Award of Attorney Fees and Costs was originally made pursuant to both Rule 54 of the Federal Rules of Civil Procedure and 5 V.I.C. §541. Neither of those provisions cited by Innovative in its initial request govern the decision to award attorney fees and costs in the instant matter. Rule 54 of the Federal Rules of Civil Procedure provides that "[c]laims for attorneys' fees and related nontaxable expenses shall be made by motion unless the substantive law governing the action provides for the recovery of such fees as an element of damages to be proved at trial." Fed. R. Civ. P. 54(d)(2). While Rule 54(d) of the Federal Rules of Civil Procedure does permit the District Court of the Virgin Islands to award costs to a

---

[1] *Prior v. Innovative Commun. Corp.*, 360 F. Supp. 2d 704 (D.V.I. 2005). On March 31, 2005, Innovative filed its Request for Award of Attorney Fees and Costs. Prior later appealed this Court's ruling finding in favor of Innovative and the matter was affirmed by the United States Court of Appeals for the Third Circuit on October 20, 2006. *Prior v. Innovative Commun. Corp.*, 207 Fed. Appx. 158 (3d Cir. 2006).

[2] Plaintiff's claim arose under federal law, ERISA, 29 U.S.C. §§ 1001-1461.

2

prevailing litigant,[3] those costs would not generally include attorney fees. *Ocean Barge Transport Co. v. Hess Oil Virgin Islands Corp.*, 598 F. Supp. 45, 47 (D.V.I. 1984) *aff'd without opinion*, 760 F.2d 257 (3d Cir. 1985).

Innovative also sought relief pursuant to a provision of the Virgin Islands Code, 5 V.I.C. § 541, which provides that "[t]he measure and mode of compensation of attorneys shall be left to the agreement, express or implied, of the parties; but there shall be allowed to the prevailing party in the judgment such sums as the court in its discretion may fix by way of indemnity for his attorney's fees in maintaining the action or defenses thereto." 5 V.I.C. § 541(b) (2007). That statute is inapplicable to the pending request for attorneys fees because its use in federal court is limited to those cases that are being heard pursuant to diversity jurisdiction. *Ocean Barge Transport Co.*, 598 F. Supp. at 47; *see also Virgin Islands Bar Assoc. v. Government of the Virgin Islands*, 661 F. Supp. 501, 503 (D.V.I. 1987) *aff'd in part and vacated in part*, 857 F.2d 163 (3d Cir. 1988) (holding that an award of attorneys' fees pursuant to 5 V.I.C. § 541 is only permissible in actions brought pursuant to Virgin Islands law and not in actions brought under federal law). Thus, 5 V.I.C. § 541 does not apply to awarding attorneys' fees in the District Court of the Virgin Islands where a federal claim is asserted. *Esposito v. Barnard*, 883 F.2d 217, 218 (3d Cir. 1989) (citing *Ocean Barge Transport Co. v. Hess Oil Virgin Islands Corp.*, 598 F. Supp. 45 and *Virgin Islands Bar Assoc.*, 661 F. Supp. 501). When a party seeks an award of fees for defending against federal claims, authority to award such fees must be grounded in

---

[3] The terms of the Revised Organic Act, 48 U.S.C. § 1615, provide that the Federal Rules of Civil Procedure are made applicable to the District Court of the Virgin Islands: *Government of Virgin Islands, Dep't of Conservation & Cultural Affairs v. Virgin Islands Paving, Inc.*, 714 F.2d 283, 286 (3d Cir.1983).

federal law. *See Virgin Islands Bar Assoc.*, 661 F. Supp. at 503.

  Since the underlying issue in this matter was a question of federal law under ERISA, the proper standard to evaluate a potential award of attorney fees is under Section 502(g)(1) of that Act[4] which provides that the court has discretion to award reasonable attorney's fees and costs to either party.[5] However, the statutory ability to award attorney fees is discretionary and is not automatically applied to the party that prevailed in the litigation. *Monkelis v. Mobay Chemical*, 827 F.2d 935, 936 (3d Cir. 1987). In determining whether to award fees under ERISA, five policy factors are to be considered: "(1) the offending parties' culpability or bad faith; (2) the ability of the offending parties to satisfy an award of attorneys' fees; (3) the deterrent effect of an award of attorneys' fees against the offending parties; (4) the benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' position." *Ursic v. Bethlehem Mines*, 719 F.2d 670 (3d Cir. 1983). It is by those five factors that the instant application will be analyzed.

### III. <u>DISCUSSION</u>

  Since the decision to award attorney's fees in this matter must be determined pursuant to federal law, the Court will address the five factor *Ursic* standard.[6]

---

[4] The Court notes that during the hearing regarding this request for attorney's fees, counsel for Innovative conceded that the local statute does not apply and the application was being made under federal law. (Tr. Mot. Atty's Fees, pg. 4, lns. 1-15.)

[5] "In any action under this title...by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1) (2007).

[6] The Third Circuit has directed that it is mandatory that a district court set forth its analysis for each of the five *Ursic* factors in making a determination on a request for attorney's fees in an ERISA case. *Anthuis v. Colt Industries Operating Corp.*, 971 F.2d 999, 1011 (3d Circ.

4

## A. Bad faith or culpability

Innovative argues that Prior acted in bad faith due to the existence of a January 24, 1997 memo by Prior's attorney Stern explaining that Prior's company would be responsible for paying his supplemental benefits subsequent to the corporate separation.[7] (Def's. Reply to Pl's. Opp. to Mot. for an Award of Atty's. Fees and Costs, pg. 3.) Innovative asserts as a result of this memo Prior understood that Innovative would not be responsible for providing a supplemental pension benefit to him and therefore is indicative of Prior's bad faith in initiating this action. (Def's. Reply to Pl's. Opp. to Mot. for an Award of Atty's. Fees and Costs, pgs. 3-4.) Furthermore, Innovative goes on to assert that even though Prior had argued that the final documents changed that portion of the agreement, by the time of trial, Prior knew that Stern had testified at his deposition to the fact that he was not aware of any negotiations to allocate Prior's supplemental pension to Prosser's company. (Def's. Reply to Pl's. Opp. to Mot. for an Award of Atty's. Fees and Costs, pgs. 3-4.) Innovative reasons that Prior was culpable because he was aware of Stern's testimony prior to trial and as such, allegedly knew that he was not entitled to the supplemental benefit. The Court infers from that argument that Innovative believes that Prior should have withdrawn his lawsuit after hearing that deposition testimony.

Prior in turn defends himself against this allegation of bad faith by stating that, according

---

1992).

[7] The portion of the January 24th Memo related to the issue of supplemental pensions, as cited by this Court in its underlying opinion in this matter, reads as follows: "The funds in trust for the ATN, Inc. pension plan need to be separated out for ATN-VI and ATN-G. [Prior] and [Prosser] each have rights to supplemental, contractual pensions under their original 1987 employment agreements with ATN, Inc. The obligations of ATN, Inc., under these agreements should be allocated to ATN-VI (with respect to [Prosser]) and ATN-G (with respect to [Prior]). ..." *Prior v. Innovative Commun. Corp.*, 360 F. Supp. 2d at 708-709.

## A. *Bad faith or culpability*

Innovative argues that Prior acted in bad faith due to the existence of a January 24, 1997 memo by Prior's attorney Stern explaining that Prior's company would be responsible for paying his supplemental benefits subsequent to the corporate separation.[7] (Def's. Reply to Pl's. Opp. to Mot. for an Award of Atty's. Fees and Costs, pg. 3.) Innovative asserts as a result of this memo Prior understood that Innovative would not be responsible for providing a supplemental pension benefit to him and therefore is indicative of Prior's bad faith in initiating this action. (Def's. Reply to Pl's. Opp. to Mot. for an Award of Atty's. Fees and Costs, pgs. 3-4.) Furthermore, Innovative goes on to assert that even though Prior had argued that the final documents changed that portion of the agreement, by the time of trial, Prior knew that Stern had testified at his deposition to the fact that he was not aware of any negotiations to allocate Prior's supplemental pension to Prosser's company. (Def's. Reply to Pl's. Opp. to Mot. for an Award of Atty's. Fees and Costs, pgs. 3-4.) Innovative reasons that Prior was culpable because he was aware of Stern's testimony prior to trial and as such, allegedly knew that he was not entitled to the supplemental benefit. The Court infers from that argument that Innovative believes that Prior should have withdrawn his lawsuit after hearing that deposition testimony.

Prior in turn defends himself against this allegation of bad faith by stating that, according

---

1992).

[7] The portion of the January 24th Memo related to the issue of supplemental pensions, as cited by this Court in its underlying opinion in this matter, reads as follows: "The funds in trust for the ATN, Inc. pension plan need to be separated out for ATN-VI and ATN-G. [Prior] and [Prosser] each have rights to supplemental, contractual pensions under their original 1987 employment agreements with ATN, Inc. The obligations of ATN, Inc., under these agreements should be allocated to ATN-VI (with respect to [Prosser]) and ATN-G (with respect to [Prior]). ..." *Prior v. Innovative Commun. Corp.*, 360 F. Supp. 2d at 708-709.

to Stern's testimony, this was a complicated transaction which included many changes that were made to the terms of the deal. (Supp. Opp. To Fee Pet., p. 3.) Prior maintains that there is no basis to Innovative's assumption that he acted in bad faith by reading the Employee Benefits Agreement to include both funded and unfunded pension benefits because the agreement did not draw a distinction. (Supp. Opp. To Fee Pet., p. 4.) Prior states that he believed, in good faith, that the supplemental benefits obligation had been transferred along with the other pension liabilities. (Supp. Opp. To Fee Pet., p. 4.)

A showing of bad faith does not necessarily require proof of a sinister purpose; a showing that a party pursued a meritless position would suffice to support the existence of bad faith. *McPherson v. Employees' Pension Plan of Am. Re-Insurance Co.*, 33 F.3d 253, 256-258 (3d Cir. 1994). The *McPherson* court continues that, in the absence of a sinister purpose, culpability may still exist where the conduct is "blameable" or "censurable" and involves a "breach of a legal duty or the commission of a fault." *McPherson*, 33 F.3d at 256-258 (citing *Black's Law Dictonary*) (explaining that something such as a breach of fiduciary duty might favor an award of fees under the first *Ursic* factor depending on district court's assessment of the wrongfulness the culpable conduct).

Even so, considering the above contentions both for and against an existence of bad faith, this Court finds that Prior did not act in bad faith or with culpable conduct in bringing and maintaining this litigation. When this Court denied the cross motions for Summary Judgment in this matter on May 22, 2003, it was clear that genuine issues of material fact did exist. While there surely was some question as to whether or not the transfer of the obligation to pay Prior's supplemental pension benefits was to be included within the agreement between parties, evidence

6

does not exist here to make a clear showing that Prior acted with culpability by continuing to pursue his claim. Had there been clear evidence of Prior's bad faith in bringing the case, this matter would have ended at the Summary Judgment stage and not proceeded to trial. Prior's actions in maintaining the pursuit of this case were not "blameable" or "censurable"; thus, this first *Ursic* factor does not weigh in favor of an award of fees.

### B.   *Offending party's ability to pay an award of attorney's fees*

Innovative refers to certain facts regarding Prior's finances to support the assertion that Prior would have the ability to pay a potential award of attorney fees and costs in this matter. Those include that as of March 24, 2005, an SEC Form 4 indicated that Prior owned 2,396,209 shares of Atlantic Tele-Network, Inc. stock valued at that time at more than $72,000,000.[8] (Def's. Reply to Pl's. Opp. to Mot. for an Award of Atty's. Fees and Costs, pgs. 4-5.) Additionally, Innovative uses facts put forth in the Atlantic Tele-Network 2003 Annual Report to assert that Prior receives yearly dividends of over $2,000,000. (Def's. Reply to Pl's. Opp. to Mot. for an Award of Atty's. Fees and Costs, pg. 5)

No defending argument was made by Prior in his opposition, so this Court will assume that he does indeed have the ability to pay a potential award of attorney fees and costs.

### C.   *Deterrent effect*

Counsel for Innovative argues an award of attorney fees would deter further litigation between these two parties. However, the spirit of the law behind this factor is potentially to deter any behavior that should be avoided in the context of achieving ERISA's objectives.

---

[8] Based on a publicly traded value of $30.29 per share. (Def's. Reply to Pl's. Opp. to Mot. for an Award of Atty's. Fees and Costs, pg. 5.)

*McPherson*, 33 F.3d at 258 (holding that the district court should have considered whether its decision served the objectives of ERISA). The *McPherson* court believed that fee awards are appropriate even without a showing of bad faith if the award would serve to deter behavior not in keeping with ERISA principles. *Id.*

Even so, an award of attorney's fees in this instance would not have any real deterrent effect in accordance with the holding of *McPherson* since there are no other members of the plan, meaning that there could be no other potential challenges to this pension plan. The litigious history between the parties is not sufficient reason to award fees under this factor of the *Ursic* analysis.

    D.    *Benefit conferred on members of the pension plan*

As with the reasoning stated above, the fact that this was a "top hat" pension plan with no other members means that analysis of this factor is inapplicable as there are no other members of the plan at issue and as such, no other members that would receive any benefit from a decision regarding an award of fees. Both Innovative and Prior agree with the assessment that this factor of the balancing test does not merit consideration.

    E.    *Relative merits of the parties' position*

It is true that Innovative prevailed in the underlying litigation by this Court's ruling that Innovative was not responsible for providing Prior's supplemental pension benefits. Although the ruling was in favor of Innovative, however, it does not directly correlate with an assertion that the entire litigation was without merit. *See McPherson*, 33 F.3d at 257 ("A party is not culpable merely because it has taken a position that did not prevail in litigation"). As mentioned previously, there was enough merit to Prior's assertions to sustain them beyond the Summary

8

Judgment stage of this litigation. Even though Prior ultimately was unsuccessful in his pursuit of his claims against Innovative, there existed enough substance to his claims to merit the continued pursuit of his case.

## IV.    CONCLUSION

For the foregoing reasons, the Court denies Innovative's Request for Award of Attorney Fees and Costs. An appropriate Order will be entered.

**DATED:** August 16, 2007

HONORABLE STANLEY S. BROTMAN
United States District Judge
(Sitting by Designation)